Argued October 28, 1976, affirmed in part, reversed in part February 14, reconsideration denied March 23, 1977, petition for review pending

FIFTH AVENUE CORPORATION, *Appellant,*
*v.*
WASHINGTON COUNTY et al, *Respondents.*
(No. 35-107, CA 5444)
(Order for Partial Summary Judgment—October 28, 1975)

FIFTH AVENUE CORPORATION, *Appellant,*
*v.*
WASHINGTON COUNTY et al, *Respondents.*
(No. 35-107, CA 5444)
(Order—January 6, 1976)
560 P2d 656

Stephen T. Janik, Portland, argued the cause for appellant. With him on the briefs were Donald T. McDougall, and Davies, Biggs, Strayer, Stoel and Boley, Portland.

Lawrence R. Derr, County Counsel, Hillsboro, argued the cause for respondents. With him on the brief were Gregory S. Hathaway, Assistant County Counsel, John M. Junkin, Assistant County Counsel, Timothy V. Ramis, Assistant County Counsel, and John H. Holloway, Jr., Assistant County Counsel, Hillsboro.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

SCHWAB, C. J.

THORNTON, J., dissenting opinion.

## SCHWAB, C. J.

Plaintiff's amended complaint contained two separate causes of suit seeking decrees declaring the comprehensive plan and the relevant zoning ordinance of Washington County invalid, and two separate causes of action for inverse condemnation.[1] Plaintiff appeals from adverse rulings as to each of these matters.

Plaintiff has owned a parcel of approximately 20 acres in Washington County since the mid-1960s. When plaintiff purchased this land it was zoned C-2 (general commercial). Plaintiff desires to construct a district shopping center on the site.[2] The county zoning ordinance in effect at the time of purchase permitted district shopping centers in C-2 zones.

On November 6, 1973, the Board of County Commissioners adopted a zoning ordinance which extensively revised the county zoning. One of the changes was that all land in the county which had been zoned C-2 was rezoned B-4 (general extensive commercial). District shopping centers are not permitted in B-4 zones. On November 27, 1973, the Board adopted a new comprehensive plan for the county. The plan superseded a plan which apparently would have permitted a district shopping center on plaintiff's land.[3] However, in the new plan, much of the 20 acres in question is designated medium density residential, some of it "neighborhood commercial," and approximately four acres are designated a "greenway area" and transit station. On October 14, 1974, plaintiff applied for a permit to build a district shopping center

[1] The causes of action seek damages for taking without compensation, but on differing theories and for differing amounts.

[2] A "district shopping center" is an entity which was described in the comprehensive plan which applied to much of Washington County from 1969 to 1973. It was defined as "a commercial center" of approximately 25-40 acres, in the vicinity of a freeway or major highway, with tenants consisting of a junior department store, extensive grocery, variety, pharmacy-drug and specialty stores.

[3] We cannot be certain because the superseded plan is not in the record.

on the 20-acre site. After the application was denied, these proceedings were initiated.

I

■ At trial plaintiff contended that the zoning ordinance is invalid because the county failed to comply with the notice requirement contained in ORS 215.223(1). The same contention is made on appeal. ORS 215.223(1) states that no zoning ordinance enacted by a county will have legal effect "* * * unless prior to its enactment * * * 10 days' advance public notice of each hearing [on the ordinance] is published in a newspaper of general circulation in the county * * *." Plaintiff concedes this was done, but argues that the *content* of the notice was inadequate under the guidelines enunciated in *Clackamas County v. Emmert,* 14 Or App 493, 513 P2d 532 (1973). The trial court did not agree, and neither do we.

*Emmert* is similar to the present case in that the content of a notice of hearing was challenged as legally insufficient. *Emmert* holds that ORS 215.223(1) is satisfied if notice reasonably apprises interested parties of the contemplated action and reasonably identifies the property involved and the time and place of the hearing. 14 Or App at 498. In this case, the notice read as follows:

"NOTICE OF PUBLIC HEARING

Notice is hereby given that a public hearing will be held by the Board of County Commissioners of Washington County on June 26, 1973 at 7:30 p.m. P.D.T. in Room 402 of the Administration Building of Washington County Courthouse Complex at 150 North 3rd St., Hillsboro, Oregon.

The hearing will concern the following portions of the proposed Revised Article II of the Washington County Community Development Ordinance relating to Zoning (Case #73-142-M).

[ 488 ]

| Material Covered District | Proposed Chapter | Proposed Revision Zoning District | Present Chapter (all Districts) | Present Zoning Article: Zoning District |
|---|---|---|---|---|
| Signs | 5 | No District | ... | No District |
| Exurb Convenience— | | | | |
| Recreation Commercial | 22 | B-1 A | ... | No District |
| Neighborhood Commercial | 23 | B-1 | 900 | C-4 |
| Community Commercial | 24 | B-2 | 1000 | C-3 |
| Highway Commercial | 25 | B-2 A | 850 | C-5 |
| Office-Business Commercial | 26 | B-3 | 1120 | C-P |
| General Extensive Commercial | 27 | B-4 | 1100 | C-2 |
| Research-Development Production | 28 | R-D | 1150, 1200 | R-D, M-4 |
| Limited Manufacturing Production | 29 | M-1 | 1300, 1400 | M-3, M-2 |
| Intensive Manufacturing Production | 30 | M-2 | 1500 | M-1 |

The regulations of each of the above zoning districts and the proposed provisions relating to signs are proposed to be altered and additional regulations recommended. Copies of the proposed regulations are on file at the office of the Planning Director, at the Branch County Building at 27280 SW Tualatin Valley Highway.

Anyone having interest may attend and be heard"

We find that this notice is at least as adequate as the notice approved in *Emmert.* The date and place of the hearing are identified, and the notice clearly states that an alteration of zoning regulation is being contemplated. The notice also reasonably identifies the land involved. Plaintiff apparently argues that the use of technical zoning symbols (e.g., C-2 to B-4), rather than actual district boundaries, made it impossible for lay persons to know which land was to be rezoned. However, the notice did contain comprehensible district nomenclatures (e.g., highway commercial) in addition to the zoning symbols. If anything, in this instance lay persons could have more readily identified affected land by these generic labels and zoning symbols than by the complicated geographic boundary descriptions used in *Emmert* and apparently favored by plaintiff. The notice in question concerned a proposed rezoning of all commercial land in Washington County, and an attempt to describe the boundaries of all affected land might have resulted in an unfathomable notice.[4] We conclude that the notice sufficiently informed the public of the land affected by the rezoning, and that the zoning ordinance itself was properly enacted.

## II

Plaintiff also sought at trial to have the county's comprehensive plan declared invalid on various grounds. One ground relates to the fact that the plan was adopted by resolution rather than by ordinance. Plaintiff argues that plans must be adopted by ordinance because they are legislative in nature and that the plan in question is therefore invalid. Contrary to the trial court, we find plaintiff's argument persuasive.

Prior to 1973, county comprehensive plans were adopted by county planning commissions. Since planning commissions cannot pass ordinances, less formal

---

[4]In many instances a more precise identification of the boundaries of land affected by proposed land-use actions might well be appropriate.

[ 490 ]

adoption procedures—usually resolutions—were customarily employed. *See generally Baker v. City of Milwaukie,* 271 Or 500, 514, n 13, 533 P2d 772 (1975). However, since 1973 county governing bodies have been responsible for adopting comprehensive plans. ORS 215.050 (*amended* by Oregon Laws 1973, ch 552, § 4, p 1217). Comprehensive plans are legislative in nature, *see Culver v. Dagg,* 20 Or App 647, 532 P2d 1127 (1975), and it is well established that "the governing body of a county must customarily express its will by the more solemn enactment of an ordinance when the matter is * * * 'legislative.' " 4 Antieau, Local Government Law § 33.00 (1966).

■ This view is also reflected in *Baker v. City of Milwaukie, supra. Baker* involved a plan which had been adopted by resolution. This mode of plan adoption was unacceptable to the court in light of its conclusion that comprehensive plans are legislative enactments which control county zoning decisions. However, *Baker* holds that labels such as "resolution" and "ordinance" are not dispositive. In effect, the court stated that the plan in question was a valid legislative enactment because it was permanent in nature and had presumably been " 'passed with all the formalities of an ordinance.' " 271 Or at 511, quoting 5 McQuillin on Municipal Corporations, § 15.02 (1969).[5] It follows that a plan which is not passed with the "formalities of an ordinance" is not a valid legislative action.

■ This conclusion is supported by strong policy considerations. "[A]ction by ordinance is a reflective process that affords an opportunity for expression of public opinion." 5 McQuillin, supra, § 15.01 at 40. The legislature's 1973 decision to require county governing bodies to adopt comprehensive plans must have had as one of its purposes the creation of an opportunity for such reflection and public involvement. This purpose

[5]The court presumed that the "requisite formalities" had been followed for the purposes of determining the propriety of sustaining the demurrer at issue in the case. *Baker v. City of Milwaukie,* 271 Or 500, 511, n 11, 533 P2d 772 (1975).

[ 491 ]

would be frustrated if plans did not have to be adopted by ordinance or by a procedure as formal as that prescribed for the enactment of ordinances.

■ The Washington County Charter prescribes the procedure for enacting ordinances.[6] Washington County is a home rule county. Its charter provisions therefore serve as limitations on the powers the electorate has decided to confer upon its county government, and they are strictly enforced. *See* 4 Antieau, *supra,* § 33.02 at 61. The county concedes that it followed neither the charter's ordinance-adoption procedure nor a procedure of equal formality. In other words, we are not presented with an ordinance masquerading as a resolution, as was presumed to be the case in *Baker.* In this case, therefore, the plan is invalid because it was improperly adopted.[7]

The county argues that the plan is valid despite the resolution form of adoption because the county had properly enacted an ordinance which permits plans to be adopted by resolution. We disagree. The salutary effects of formal adoption procedures can only be realized when the formality accompanies the legislative action itself.

### III

■ The county demurred to the plaintiff's two causes of action for inverse condemnation, and the demurrer was sustained. On appeal plaintiff argues that it has stated a cause of action for inverse condemnation with regard to that portion of its property which is planned for a greenway and transit station. Our conclusion that the plan was improperly adopted and therefore invalid renders this issue moot.

---

[6] The procedure need not be set forth here. However, one requirement—that a proposed ordinance be read at three consecutive board meetings before enactment—will suffice to illustrate the differences between ordinance enactment and resolution adoption. Resolutions can be adopted after only one reading.

[7] Although plaintiff contends that ORS 203.035(1) is additional authority for the proposition that county governing bodies must conduct legislative business by ordinance, we need not and do not consider this contention here.

## IV

Certain issues regarding the validity of the plan and zoning ordinance were disposed of by summary judgment. Plaintiff contends that summary judgment procedures should not have been followed. Again, our conclusion that the plan is invalid renders this issue moot as it relates to the plan.

Regarding the zoning ordinance, plaintiff contends in part that the ordinance is unconstitutional—that it is "arbitrary and capricious and unreasonable" *as applied to the land in question,* because it has no reasonable or substantial relationship to the public health, welfare or safety.

A similar claim was made in *Multnomah County v. Howell,* 9 Or App 374, 496 P2d 235 (1972), wherein lots containing a rock quarry were zoned residential. The landowner in *Howell* contended that the zoning was unreasonable as applied to the quarry because residential uses were impossible. In *Howell* it was noted that plans and zoning ordinances are presumed valid, and that those challenging such land-use controls must bear the burden of showing unreasonableness. 9 Or App at 379. A mere difference of opinion over what uses are reasonable under the circumstances will not suffice to establish that local government acted unreasonably. *Multnomah County v. Howell, supra* at 379, citing *Dennis et ux v. City of Oswego et al,* 223 Or 60, 353 P2d 1044 (1960). To establish unreasonableness in this context it has been said that plaintiffs "* * * must show that if the [zoning] ordinance is enforced they will be precluded from using their property for any purpose to which it is reasonably adapted * * *." *City of Phoenix v. Burke,* 9 Ariz App 395, 396, 452 P2d 722 (1969). *Howell* concluded that the zoning ordinance in question did not prevent the landowner from making future beneficial use of his property, and therefore held that the ordinance was not unreasonable. 9 Or App at 383-84.

Here, plaintiff's amended complaint states that

under the zoning ordinance all of the property in question can be put to beneficial (B-4) uses, albeit not uses as profitable as plaintiff had hoped when the land was purchased. Under such circumstances, there is no genuine issue of fact regarding the constitutionality of the ordinance as it applies to plaintiff's land, and summary judgment was appropriate.

Plaintiff also contends that the present zoning is contrary to the Northeast Community Plan, the comprehensive plan which applied before the 1973 plan was invalidly adopted. As we understand plaintiff's position, it is that: (1) the invalidation of the present plan restores the Northeast Plan; (2) the present zoning ordinance must therefore comply with the Northeast Plan; and (3) the present ordinance is invalid under *Baker v. City of Milwaukie, supra,* because it fails to comply with said plan.

The trial court disposed of these issues by summary judgment on the ground that plaintiff had not exhausted the administrative remedies of seeking a zone change or plan amendment. However, we conclude that plaintiff need not attempt to modify the ordinance or plan before it can seek a judicial determination of whether the ordinance complies with the mandates of *Baker.*

In cases where a zoning ordinance is challenged only as it relates to a specific parcel, it is generally acknowledged that declaratory relief cannot be obtained until the plaintiff has exhausted all adequate administrative remedies. *See* 3 R. Anderson, American Law of Zoning, § 24.06 at 666 (1968). We must therefore determine whether procedures for amending comprehensive plans and zoning ordinances constitute such remedies.

In most jurisdictions plan and zoning ordinance changes are legislative acts, and the general view is that such "legislative remedies" need not be exhausted before judicial relief is sought. *See* 3 R. Anderson, *supra,* § 24.06 at 672. However, the county argues that

in cases such as this, where such amendments are quasi-judicial under *Fasano*,[8] they are administrative remedies in essence, and must be exhausted if adequate.

■ It is true that certain local government land-use decisions are quasi-judicial under *Fasano* and not legislative. As to the issue here this is a distinction without a difference. Exhaustion cases typically hold that judicial relief is barred if a party fails to utilize an organic provision of a zoning ordinance or some statutory provision which supplies an administrative procedure for relief. *See,* e.g., *Gayton Triangle Land Co. v. Board of Supervisors,* 216 Va 764, 222 SE2d 570 (1976) (variance procedures not followed). In such cases the validity of the ordinance need not be challenged in order to obtain relief.

■ ■ Here, however, the relief sought can only be obtained if plaintiff establishes that there is an inconsistency between the ordinance and the plan which invalidates the present ordinance as it relates to land in question. Under *Baker* the question of consistency between a plan and an ordinance is essentially a question of law. *See also Green v. Hayward,* 275 Or 693, 552 P2d 815 (1976); *Kristensen v. Eugene Planning Com.,* 24 Or App 131, 134, n 1, 544 P2d 591 (1976). Determining whether the consistency requirement is being complied with is therefore not an administrative action like granting a variance or special exception. *See Eagle Creek Rock Prod. v. Clackamas Co.,* 27 Or App 371, 556 P2d 150 (1976).[9]

---

[8] *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973).

[9] The nonconforming use at issue in *Eagle Creek Rock Prod. v. Clackamas Co.,* 27 Or App 371, 556 P2d 150 (1976), could be continued as a matter of right if its existence were established under ORS 215.130(4). We therefore held that a party allegedly possessing such a property right need not exhaust county administrative remedies before seeking a judicial determination that the right existed as a matter of law. 27 Or App at 374-75. Similarly, the exhaustion doctrine is inapplicable when a property owner seeks judicial enforcement of his legal right to be free from zoning regulations which are not in accordance with the controlling comprehensive plan.

■ Since the questions involved here are questions of law, their resolution is a judicial function. We therefore hold that plaintiff does not have to seek a zone change or plan amendment before it can seek a judicial declaration that the ordinance is contrary to the plan.

Affirmed in part; reversed in part and remanded.

**THORNTON, J.,** dissenting.

I cannot agree with the majority holding that Washington County's comprehensive framework plan is invalid because it was adopted by resolution and order rather than by ordinance.[1]

First, I can find no such requirement in the constitution and statutes of this state.

The applicable statute is ORS 215.050, which reads:

"The county governing body shall adopt and may from time to time revise a comprehensive plan and zoning, subdivision and other ordinances for the use of some or all of the land in the county. The plan and related ordinances may be adopted and revised part by part."

As I read the above provision, the legislature is thereby expressly recognizing the distinction between (a) the plan and (b) the implementation of the plan, and providing that the implementation of the plan shall be by the county governing body and must be by ordinance. It follows therefore by a simple application of the rule of *inclusio unius est exclusio alterius,* that while the implementation of the plan must be by ordinance, there is no legal impediment to the adoption of the plan by resolution. Furthermore, the dichotomy between the comprehensive plan and its implementation described above is repeated in the

_____
[1] The brief of defendant county indicates that many, if not most, of the county as well as city comprehensive plans now in effect in this state were adopted by resolution and order.

language of ORS 215.055(1) and (2), which provide in part:

"(1) *Any comprehensive plan and all zoning subdivision or other ordinances and regulations* authorized by ORS 215.010 to 215.233 and 215.402 to 215.422 and adopted prior to the expiration of one year following the date of the approval of state-wide planning goals and guidelines under ORS 197.240 shall be designed to promote the public health, safety and general welfare and shall be based on the following considerations, among others: * * *

"(2) *Any plan and all zoning, subdivision or other ordinances and regulations* * * * shall be designed to comply with such state-wide planning goals and any subsequent revisions or amendments thereof." (Emphasis supplied.)

I fail to see how, as the majority argues, the 1973 amendment which required that comprehensive plans be approved by the commissioners rather than the planning commission had the effect of requiring that plans must be approved by ordinance rather than by resolution. There is certainly nothing in the language of the amendment to indicate any such change was intended. To the contrary, the meaning I get from the language of the statute is exactly the opposite.

Second, the cases that have touched upon this point do not support the majority's conclusion.

Let us first consider *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975), which involved the comprehensive plan of the city of Milwaukie. Although the issue at bar was not directly raised, I can find nothing in *Baker* that supports the conclusion that the plan was invalid because it was adopted by resolution rather than by ordinance. To the contrary the court treated the Milwaukie plan as having been duly enacted and proceeded to examine it.

*Culver v. Dagg,* 20 Or App 647, 532 P2d 1127, Sup Ct *review denied* (1975), involved a challenge to an ordinance implementing the same Washington County comprehensive plan that is involved here. In *Culver*

[ 497 ]

this court treated the comprehensive plan as having been duly enacted and proceeded to consider the petitioner's challenge to the ordinance implementing that plan. Here again, the issue at bar was not raised. Nevertheless *Culver* seems to stand for the tacit recognition by this court of the validity of the very plan the majority now says is void.

In *Green v. Hayward,* 23 Or App 310, 542 P2d 144 (1975), *rev'd on other grounds* 275 Or 693, 552 P2d 815 (1976), this court touched directly upon this same point. There we said:

"* * * Our Supreme Court also held in *Baker* that a comprehensive plan properly enacted as law controls zoning decisions irrespective of whether the mode of enactment is by ordinance or resolution." 23 Or App at 316.

Was this not an express recognition by this court that comprehensive plans may be adopted by resolution and order? Are we now overruling the above statement in *Green*?

In *Pohrman v. Klamath County Comm.,* 25 Or App 613, 550 P2d 1236 (1976), we said that a comprehensive plan does not have the force of law, and upheld the action of the board of county commissioners in refusing to follow a change in the comprehensive plan which had been previously allowed by the planning commission. Why then must the plan be enacted by an ordinance? A comprehensive plan is simply a blueprint for the future. It is the zoning ordinance implementing the plan that is the law, *Baker v. City of Milwaukie,* supra at 506 et seq, and must be enacted as a law. ORS 215.050.

The true nature of the comprehensive plan is described in 3 Anderson, American Law of Zoning 307, § 17.15 (1968), in the following terms:

"A comprehensive plan is not prepared and adopted primarily with a view to its legal impact upon the right to use land. Such a plan, whether it is adopted by a planning commission or by a municipal legislative body,

[ 498 ]

is a guide to community development rather than an instrument of land-use control. * * *"

Third, it seems to me that voiding this exceptionally complex and thoroughly prepared comprehensive plan on the procedural ground that the board did not perform the barren exercise of reading this resolution three times, impermissibly exalts form over substance. The Washington County plan, although passed in the form of a resolution, had far more elaborate procedural and substantive safeguards, more consideration and care in preparation than any ordinary enactment. Further, it seems to me that even if the technical irregularity relied on by the majority is potentially dispositive, in light of the *Baker v. Milwaukie, supra,* directive that we look at the substance of the enactment rather than the form, the form of the enactment is proper because Ordinance No. 120, which provides for a comprehensive plan and special procedures to assure full consideration of the plan, states that:

"A.   The Board shall receive the proposed Comprehensive Plan and action of the Planning Commission and shall schedule and hold its own public hearing in the same manner provided for by Section 6(A) of this article.

"B.   After the close of the public hearing, *the Board may, by Resolution and Order, adopt, reject or adopt with modifications* consistent with the standards contained in Section 5 of this ordinance, *the proposed Comprehensive Plan.*" (Emphasis supplied.)

There was no claim that the formal adoption procedures were not followed with reference to Ordinance No. 120 and I can see no logical reason why a home rule county cannot adopt an ordinance which effectively provides that a subsequent specific enactment may be adopted by resolution and order, especially when the subject of the subsequent enactment was as fully aired and considered as this one. The majority's curt dismissal of the ordinance incorporation argument and vague allusion to the salutary effect of formal adoption procedures simply is not an adequate

[ 499 ]

answer to the county's meritorious arguments on this point.

I summarize my reasons for dissenting on the first point as follows:

(1) Washington County's home rule authority permits it to transact business by resolution and order;

(2) The county's Ordinance No. 120 directs the board of commissioners to adopt the comprehensive plan by resolution and order;

(3) The Oregon Constitution places no limits upon the authority of this county to act by resolution and order;

(4) ORS 215.050 contemplates that comprehensive plans can be adopted by resolution;

(5) This court held in *Green v. Hayward, supra,* that comprehensive plans can be enacted by either ordinance or resolution;

(6) The majority's decision is in effect a judicial amendment of ORS 215.050 contrary to ORS 174.010.[2]

As our Supreme Court said in *State v. La Follett,* 132 Or 257, 264, 284 P 283 (1930), in refusing to insert additional requirements in the contempt statute:

"* * * To read into the statute a requirement not contained in the statute and which is wholly foreign to it is judicial legislation. * * *"

Additionally, I am in disagreement with the majority opinion on another issue, namely, was plaintiff required to exhaust his administrative remedies before filing suit?

I am persuaded by the authorities cited by defendants that the trial judge was correct in ruling that plaintiff was required to pursue the procedure in the

_____

[2] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

county zoning ordinance for small tract plan changes before filing suit, and should not have been reversed on this point. *Gingell v. County Commissioners,* 249 Md 374, 239 A2d 903 (1968). Accord: *Hopewell Gardens, Inc. v. Town of East Fishkill,* 76 Misc2d 234, 349 NYS2d 481 (1973); *Medical Arts, Inc. v. Rohrbaugh,* 293 So2d 366 (Fla App 1974); *National Brick Co. v. City of Chicago,* 92 Ill App2d 192, 235 NE2d 301 (1968).